UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,


                    v.                              DECISION AND ORDER
                                                        12-CR–311


KENNETH GRAHAM,

                         Defendant.

_____


## INTRODUCTION

Before the Court is defendant Kenneth Graham's motion for a new trial

pursuant to Rule 33 of the Federal Rules of Criminal Procedure and the Fifth and

Sixth Amendments of the United States Constitution.  For the following reasons,

defendant's motion is denied in its entirety.


## BACKGROUND AND RELEVANT FACTS

Defendant Kenneth Graham was charged, in a Superseding Indictment,

with: (1) sex trafficking by force, fraud or coercion in violation of 18 U.S.C.

§1591(a); (2) sex trafficking of a minor by force, fraud or coercion in violation of

18 U.S.C. §§§1591(a), 1591(b)(1) and 1591(b)(2); and (3) sex trafficking of a

minor in violation of 18 U.S.C. §§1951(a) and 1951(b)(2).  (Dkt. No. 7)  In sum, it

was alleged that defendant recruited, enticed, caused, forced, and/or coerced the

three victims to engage in acts of prostitution for his own financial gain.  Victim 1 was an adult, while Victims 2 and 3 were minors at the time of the alleged offenses.

Defendant retained attorney Michael Deal to represent him.  The matter was referred to Magistrate Judge Hugh B. Scott for handling of all pre-trial proceedings.  Defendant was arraigned on the Superseding Indictment and entered a plea of not guilty.  Following a detention hearing on September 14, 2012, defendant was remanded pending trial.

On November 21, 2012, during an appearance before Magistrate Judge Scott, defendant waived the filing of any pre-trial motions, refused any further exclusions of Speedy Trial Act time and demanded an immediate trial.  Deal stated that although he had advised defendant of certain issues that could be raised during pre-trial motions, such as the suppression of a cell phone confiscated at the time of the arrest, defendant did not want any pre-trial motions to be filed.  Magistrate Judge Scott held a colloquy with defendant to confirm his wishes.  The Magistrate Judge warned defendant that the decision to waive pre-trial motion practice may affect him adversely and that he may be giving up certain rights, such as the right to contest the use of specific evidence at trial. Defendant indicated that he understood this.  Defendant reiterated his desire to forego any pre-trial motion practice and instead schedule an immediate trial. Defendant stated that he "thought about [not filing motions] for a long time" and

2

that the decision to waive pre-trial motion practice was his "final decision".  (Dkt.
No. 76)

      The matter was then referred to this Court, and a jury trial was scheduled
to commence on January 8, 2013.  The Court conducted pre-trial conferences
with counsel for defendant and the Government on January 3, 2013 and January
7, 2013.  A number of evidentiary issues were discussed during the pre-trial
conferences, including the relevancy and application of Rule 412 of the Federal
Rules of Evidence.  Rule 412 addresses the prohibition of evidence regarding a
victim's past sexual behavior or predisposition in criminal sex offense cases,
except in very limited circumstances.

      On January 8, 2013, the Government filed a motion *in limine*, pursuant to
Rule 412, seeking to prohibit defendant from introducing any evidence of the
victims' sexual behavior or predisposition, including acts of prostitution, which
occurred prior to or subsequent to the time period covered by the Superseding
Indictment.  Defendant filed a response in opposition to the Government's
motion.[1]  On January 9, 2013, prior to the start of trial proof, this Court issued an
oral decision granting the Government's motion.   Specifically, the Court ruled
that defendant would be prohibited from introducing or eliciting evidence or

---

      [1] The parties agreed that evidence of sexual behavior and prostitution by the
victims, including sexual relations with defendant, during the time period charged in the
Superseding Indictment, was admissible and part of the *res gestae* of the charged
offenses.

testimony concerning the victims' sexual behavior, including acts of prostitution, prior to or subsequent to the time periods charged in the Superseding Indictment. In addition, the parties would be permitted to introduce evidence and elicit testimony of sexual behavior and prostitution by victims, including sexual relations with defendant, during the time periods charged in the Superseding Indictment, and this evidence or testimony would not serve to open the door to questioning of the victims regarding prior or subsequent sexual behavior or prostitution.[2]

On January 17, 2013, following a seven day jury trial, defendant was convicted of all three counts set forth in the Superseding Indictment.  Sentencing was scheduled for May 22, 2013.  On May 13, 2013, Deal filed a motion for adjournment of defendant's sentencing and appointment of new counsel.  The motion indicated that in preparing for sentencing, defendant asked Deal to make a claim that could "only be characterized as one of ineffective assistance of counsel."  Deal informed the Court that, as a result of his client's recent assertions, there was now a direct conflict of interest such that he could not continue to adequately represent defendant.  On May 28, 2013, this Court relieved Deal and appointed attorney Robert Convissar to represent defendant.[3]

---

[2] On January 28, 2013, at the conclusion of the trial, the Court filed a written Decision and Order setting forth its reasoning in detail.  (Dkt. No. 35)

[3] Deal was initially retained by defendant.  However, on February 22, 2013, Deal submitted an affidavit stating that sometime prior to the start of the trial, defendant became financially unable to continue to pay for his representation.  Therefore, the Court appointed Convissar pursuant to the Criminal Justice Act.

After a number of extensions of time to allow new counsel to obtain transcripts and review the record, the instant motion for a new trial was filed.

Defendant argues that he chose to forego all pre-trial motions and proceed to an immediate trial based upon representations by Deal that the charges against him were defensible.  Specifically, defendant claims that Deal advised him that they could introduce evidence of the victim witnesses' prior sexual activities and histories as prostitutes and that this evidence would serve as a defense to allegations that defendant engaged in sex trafficking by force, fraud or coercion.  Defendant claims he was told by Deal that, by using this type of evidence, there was a strong probability of acquittal as to two of the counts.  He further claims that Deal advised him that while the remaining count "may be a problem", it carried a 10-year maximum prison sentence only.  Defendant asserts that, prior to trial, the Government offered him a plea disposition that would have likely resulted in a prison sentence of approximately 10-12 years.  Defendant claims that because Deal erroneously advised him that the victims' prior sexual conduct would result in a credible defense and because Deal failed to make a timely motion regarding the admissibility of this evidence, he decided not to accept this plea offer.  Defendant now faces a potential life sentence.

Defendant further claims that immediately following his conviction, he asked Deal to attempt to secure a new trial.  Defendant alleges that Deal advised him that the only remedy was an appeal to the Second Circuit Court of Appeals.

Defendant claims that as soon as he learned of the existence of Rules 29 and 33 of the Federal Rules of Criminal Procedure, he sought to have Deal removed as his counsel.

## **DISCUSSION**

### *Procedural Posture and Timeliness of Motion*

Most claims of ineffective assistance of counsel are brought pursuant to Section 2255 of Title 28 of the United States Code, in the form of a habeas corpus motion or petition attacking sentencing.  *United States v. Dukes*, 727 F.2d 34 (2d. Cir. 1984).  However, courts in this Circuit have held that the proper procedural avenue for defendants who wish to raise an ineffective assistance of counsel claim after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.  *United States v. Brown*, 623 F.3d 104 (2d. Cir. 2009) ("[b]ecause [defendant] raised his ineffective assistance claim after the jury convicted him but before sentence was imposed, we agree with the district court that a habeas petition...was not 'the proper vehicle' by which to advance his claims"); *United States v. Rivera*, 2013 U.S. Dist. LEXIS 82076 (EDNY 2013).  Since defendant has yet to be sentenced, his ineffective assistance of counsel claims have been raised in the instant Rule 33 motion.

Federal Rule of Criminal Procedure 33 provides that, upon a defendant's motion, "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  *See* Fed. R. Crim. P. 33.  Rule 33 further provides that any

motion for a new trial, grounded on any basis besides newly discovered evidence, should be filed within 14 days after the guilty verdict.  At the conclusion of the trial, Deal did not file any motions pursuant to Rule 33 or Rule 29.[4]  Convissar filed the instant motion on October 28, 2013, approximately eight months after the jury found defendant guilty of three counts of sex trafficking.  The Government argues that defendant's motion for a new trial is untimely, and therefore should be denied.

Rule 45 of the Federal Rules of Criminal Procedure indicates that a Court may extend the time to file a motion for a new trial for good cause or in cases of excusable neglect.  The Supreme Court has referred to "excusable neglect" as an "elastic concept".  *Pioneer Inv. Services Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 392 (1993).  The Supreme Court has further held that a determination of excusable neglect "is at bottom an elastic one, taking account of all relevant circumstances surrounding the party's omission."  *Id*. at 394-95.  Factors to be considered in evaluating excusable neglect include: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d. Cir. 2003).

---

[4]  Federal Rule of Criminal Procedure 29(c)(1) states that a defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.

The Court appointed Convissar as counsel shortly after being notified that a conflict had arisen between Deal and defendant.  Defendant states that immediately after the jury verdict, he asked his attorney to "get him a new trial." However, Deal informed him that the only remedy was an appeal to the Second Circuit Court of Appeals.  Defendant further states that he brought his ineffective assistance of counsel claims to light as soon as he learned about Rules 29 and 33 of the Federal Rules of Criminal Procedure.

No motions seeking a new trial were filed within the 14 day deadline set forth by Rules 29 and 33, and the Court finds that defendant should not be punished for his attorney's failure to file post-trial motions.  In addition, it appears that Convissar filed the instant motion as soon as practicable after he was provided the file and trial transcript.  The Government did not lose any claims or defenses as a result of the late filing, and therefore was not substantially prejudiced in responding.  For these reasons, the Court finds that defendant's delay in filing the motion is excusable, and that good cause exists to consider the untimely filing on its merits.

*Standard for Ineffective Assistance of Counsel Claims*

The Sixth Amendment guarantees all criminal defendants the right to counsel and the Supreme Court recognized, long ago, "that the right to counsel is the right to effective assistance of counsel."  *McMann v. Richardson*, 397 U.S. 759, 771 (1970).  "A convicted defendant's claim that counsel's assistance was

so defective as to require reversal of a conviction...has two components."

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, a defendant must

show that counsel's performance was deficient.  *Id*.  In order to do so, a

defendant must demonstrate that his attorney's performance "fell below an

objective standard of reasonableness."  *Id*. at 687-88; *see also United States v.*

*Cohen*, 427 F.3d 164, 167 (2d. Cir. 2005).   Second, a defendant must establish

that counsel's deficient performance prejudiced his defense.  *Strickland*, 466 U.S.

at 668.  In other words, "[t]he defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the results of the

proceeding would have been different."  *Id*. at 698.  The Supreme Court has

instructed that crucial to any such review is "whether counsel's conduct so

undermined the proper functioning of the adversarial process that the trial cannot

be relied on as having produced a just result."  *Id*. at 686; *United States v.*

*Gaskin*, 364 F.3d 438, 468 (2d. Cir. 2004) (defendant "bears a heavy burden" in

demonstrating ineffective assistance of counsel).

Under the first component, the Court "must apply a strong presumption that

counsel's representation was within the wide range of reasonable professional

assistance."  *Harrington v. Richter*, 131 S.Ct. 770, 790 (2011).  In *United States v.*

*Strickland*, the Supreme Court described the limited approach a trial court is

obligated to take in critiquing an attorney's representation.  466 U.S. at 689.

"Judicial scrutiny of counsel's performance must be highly deferential.  It is all to

tempting for a defendant to second-guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable." *Id*. (a lawyer is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

<u>*Failure to File a Motion in Limine Pursuant to Rule 412*</u>

Defendant argues that Deal rendered ineffective assistance in failing to make a timely motion *in limine* pursuant to Rule 412 of the Federal Rules of Evidence to address admissibility of evidence of the victims' prior sexual predisposition or history as prostitutes.  The Court rejects this argument, and finds that the manner in which counsel handled the evidentiary issues created by Rule 412, both prior to and during the trial, did not fall below an objective standard of reasonableness.  Included in the Government's response to defendant's motion for a new trial is a sworn affidavit by Deal.  Therein, Deal states that he repeatedly advised defendant, before the start of the trial, that the victims' prior sexual history or acts of prostitution before or after the time period charged would not serve as a defense.  On January 8, 2013, the Government filed a motion *in limine* pursuant to Rule 412, seeking to prohibit any evidence regarding the victims' sexual conduct before or after the time period alleged in the Superseding Indictment.  On January 9, 2013, Deal filed a response in opposition

10

to the Government's motion although, as stated in his affidavit, he knew the applicable case law did not support the defense's position.  In addition, Deal states that in opposing the motion, he was aware that the Government intended to introduce facts establishing that the victims engaged in prostitution activities during the time period of the Superseding Indictment.

The Court finds that Deal acted reasonably in both opposing the Government's motion pursuant to Rule 412, and also advising his client prior to the start of the trial that the victims' prior history of prostitution would not serve as a viable defense.  The Court further finds that counsel's failure to file his own motion *in limine* pursuant to Rule 412 did not fall below an objective standard of reasonableness since (1) he advanced the same arguments in the opposition to the Government's motion that he would have in a motion made by defense; (2) he knew that some evidence of the victims' activities as prostitutes would be offered by the Government; (3) he advised his client that the victims' sexual history or predisposition to prostitution was not a viable defense; and (4) he knew the applicable case law did not support a position that such testimony was admissible.  *See Ochoa v. Breslin,* 798 F. Supp. 2d 495, 503 (SDNY 2011) ("Failure to make a motion...that likely would not have been granted cannot constitute ineffective assistance of counsel.  A lawyer has an obligation to apply his or her independent professional judgment in deciding what arguments to make."); *United States v. Arena*, 180 F.3d 380, 397 (2d. Cir. 1999) (failure to

11

make a meritless argument, or an act or omission that might be considered sound

trial strategy, does not amount to ineffective assistance).

Defendant places a great deal of emphasis on the timing of the motion, and

the fact that Deal did not file a motion *in limine* addressing Rule 412 before the

start of trial.  However, the record is clear that defendant himself, contrary to the

advice of both Deal and Magistrate Judge Scott, elected to waive all pre-trial

motions and proceed immediately to trial.[5]  While Deal states that Rule 412 was

not specifically discussed with defendant at that time, defendant was specifically

advised that by forgoing pre-trial motion practice, he may lose the right to contest

certain evidence and he may be affected adversely at trial.  Moreover, it is also

apparent to the Court that despite the lack of pre-trial motion practice, the

applicability of Rule 412 and the admissibility of the victims' prior sexual history

and behavior was adequately addressed, with both defendant and the Court, prior

to the start of the trial.  The Court was present for two pre-trial conferences with

counsel, and Rule 412 was discussed on at least one occasion. A motion *in

limine* was briefed by both sides and argued before the start of trial proof.  In light

of defendant's insistence on waiving pre-trial motion practice before the

Magistrate Judge, the discussion of Rule 412 during the pre-trial conference,

---

[5]  The record from November 21, 2012 is consistent with Deal's affidavit, which
states that although Deal explained to defendant the importance and necessity of pre-
trial motions, defendant unreasonably and stubbornly insisted that they proceed to an
immediate trial.

Deal's advice to his client regarding the lack of defenses, and the fact that counsel opposed the Government motion *in limine*, the Court finds that counsel's performance did not fall below an objective standard of reasonableness.

### *Prejudice to Defendant*

Even if defendant was able to show that Deal's failure to file a motion *in limine* pursuant to Rule 412 fell below an objective standard of reasonableness, which he cannot, the ineffective assistance claim still fails because defendant cannot show that he was prejudiced by counsel's failure to file the motion.  In order to establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 688; 694 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.")

Federal Rule of Evidence 412 provides that evidence of a victim's sexual behavior or sexual predisposition is not admissible in a criminal case involving alleged sexual misconduct unless it is offered to prove consent, that someone other than the defendant was the source of injury, semen or other physical evidence, or if the exclusion of the evidence would violate defendant's constitutional rights.  *See* Fed. R. Evid. 412.  The Government moved to prohibit defendant from eliciting or presenting any evidence concerning the victims'

13

sexual predisposition or history of prostitution.  Defendant filed an opposition to

the motion arguing that the exclusion of this evidence would violate his Fifth

Amendment right to present a defense and Sixth Amendment right to confront the

witnesses against him.  This argument, which is presumably the same argument

which would have been raised by defendant in his own motion *in limine*, was

rejected by this Court and finds no support in relevant case law.  *See United*

*States v. Elbert*, 561 F.3d 771 (8th Cir. 2008) (upholding district court's denial of

sex trafficking defendant's multiple pre-trial motions to admit evidence of victims'

previous and subsequent sexual behavior pursuant to Rule 412(c)(1)(A); *United*

*States v. Shamsud-Din*, 2011 U.S. Dist. LEXIS 124449 (N. Dist. Ill 2011)

(prohibiting a defendant charged with sex trafficking from introducing evidence

that one adult victim and one minor victim engaged in acts of prostitution based

upon either his Fifth Amendment right to a fair trial or his Sixth Amendment right

to confront witnesses); *United States v. Valenzuela*, 2012 U.S. App. LEXIS 22609

(9th Cir. 2012) (district court did not err in excluding evidence and prohibiting

cross examination about the victims' possible prior acts of prostitution since those

questions were not relevant to defendants' use of force, fraud or coercion).

     Since evidence of the victims' sexual histories would have been prohibited

even if defense counsel filed a timely motion *in limine*, the ineffective assistance

of counsel claim fails.  *See United States v. Matos*, 905 F.2d 30, 32 (2d. Cir.

1990) (in order to establish ineffective assistance of counsel for failure to file a

motion, a defendant must show that the motion was meritorious); *United States v. Yanishefsky*, 500 F.2d 1327 (2d. Cir. 1974) (any motion to suppress would have been unsuccessful, and therefore counsel's failure to make the motion cannot be deemed prejudicial to defendant).

Moreover, the Court notes that there was overwhelming, credible and persuasive evidence of defendant's guilt presented over the course of the trial. All three victims, two of whom were minors during the time period set forth in the Superseding Indictment, credibly testified as to defendant's sex trafficking activities and the manner in which he recruited, enticed, encouraged, coerced, forced or persuaded each of them to engage in prostitution for his own financial gain. There was evidence that defendant advertised as to the victims' services on the internet, that he drove the victims to meet clients and arranged for hotel rooms, and that he took money that the victims received from clients for prostitution activities. Two of the victims testified as to physical altercations with defendant. In light of the testimony and evidence presented at trial, the Court finds that even if defense counsel had successfully made a motion to allow evidence of the victims' prior or subsequent prostitution activities in evidence, this evidence would not have persuaded the jury that defendant did not coerce, force or entice these women to engage in prostitution. Moreover, this type of evidence certainly would not have persuaded the jury that defendant did not engage in sex trafficking of a minor, which does not require the force, fraud or coercion of the

victim.  It is also significant to note that there was testimony that defendant met at least one of the victims when he answered her advertisement for prostitution services.  In light of the fact that some evidence of a victim's prior prostitution was introduced to the jury, who ultimately found defendant guilty of all three counts of sex trafficking, there is no reasonable basis to conclude that additional evidence in this regard would have had any effect whatsoever on the verdict.

For these reasons, it cannot be said that any prejudice resulted from defense counsel's failure to file a motion *in limine*, nor was the outcome of the trial affected in any way.  *See Henry v. Poole*, 409 F.3d 48 (2d. Cir. 2005) (the question to be asked in assessing prejudice from counsel's alleged errors, "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.")

## *Defendant's Refusal of a Plea Offer*

The Sixth Amendment right to effective counsel extends to plea negotiations.  *United States v. Gordon*, 156 F.3d 376, 379 (2d. Cir. 1998).  Defense counsel "has the duty to communicate formal offers from the prosecution [and] to accept a plea on terms and conditions that may be favorable to the accused."  *Missouri v. Frye*, 132 S.Ct. 1399, 1408 (2012).  In order for a court to find that counsel provided ineffective assistance in the context of plea negotiations, "a defendant must show the outcome of the plea process would have been difference with competent advice."  *Lafler v. Cooper*, 132 S.Ct. 1376,

1384 (2012).  The Second Circuit has held that:

> [A] defendant can make this showing by producing both a sworn
> affidavit or testimony stating that he would have accepted or rejected
> a plea agreement but for his counsel's deficient performance and
> also some additional "objective evidence" supporting his claim.  This
> "objective evidence" can be a large disparity between the
> defendant's advised and actual sentencing exposure.  Even with
> such a disparity, however, the district court must still find the
> defendant's evidence to the effect he would have made a different
> decision but for his counsel's deficient advice to be credible.

*United States v. Washington*, 2014 U.S. Dist. LEXIS 134666 (SDNY 2014);

*quoting United States v. Frederick*, 526 Fed. Appx. 91, 93 (2d. Cir. 2013).  In light

of this finding, district courts are instructed to consider all the evidence and

determine whether counsel's deficient performance was the "but for" cause of

defendant's decision.  *United States v. Arteca*, 411 F.3d 315, 321 (2d. Cir. 2005).

Defendant argues that had counsel made a timely motion pursuant to Rule

412, and had the Court ruled that evidence of the victims' sexual history or

predisposition was inadmissible, he would have accepted the plea offered by the

Government.  Defendant claims that he only proceeded to trial because he

believed, based upon the advice of his counsel, that he could use the victims' prior

activities as prostitutes to discredit them and demonstrate that he did not force or

coerce them to engage in prostitution.  The Court finds that defendant's claims in

this regard are not credible, and that the record is devoid of any evidence that

defendant's decision not to accept a plea was based upon defense counsel's

assurances of a defense to the charges.

17

In his sworn affidavit, Deal states that he never expressed confidence of a defense "in any manner whatsoever" to defendant.  Deal avers the he told defendant repeatedly that defendant had "major problems" with all counts of the Superseding Indictment, that he was in "dire danger" of being convicted, that the evidence against him was substantial, and that the jury would be inclined to believe the female victims.  Deal states that he repeatedly told defendant that the victims' prior sexual history would not serve as a defense, and that he implored defendant to accept a plea.  Deal states that defendant maintained a stubborn belief that the victims would not testify against him, and that the jury would view them as liars because they engaged in acts of prostitution.  Deal explains that he and Barry Covert, a partner in his law firm, met with defendant shortly before the trial in an attempt to convince him to reconsider his decision not to accept a plea.  Following this meeting, defendant advised Deal to attempt to negotiate a plea offer.  Deal arranged a meeting with himself, defendant, and the Government in an attempt to arrive at a plea.  However, the meeting abruptly ended when defendant "flatly refused to listen to [Deal] or the attorneys for the Government", regarding the strength of the case against him.

Deal's account of the events leading up to trial is corroborated by a sworn affidavit filed by his law partner, Barry Covert.  Covert indicates that he and Deal met with defendant in attempt to convince him to reconsider his refusal to accept a plea offer.  Covert states that he and Deal advised defendant that he did not have

any viable defenses, that the victims' prior sexual conduct would not constitute a defense to the charges, that defendant would have credibility issues should he decide to testify at trial, and that the Government had an "overwhelmingly strong" case against him.  Based upon these affidavits, it is clear to this Court that defendant did not reject the Government's plea offer "but for" Deal's representation that he had a defense to the charges.  Instead, defendant rejected the Government's plea offer even though Deal, and Covert, advised him on numerous occasions that there was no viable defense to the charges, and strongly recommended that he accept the plea.

While defendant offers a sworn affidavit disputing many of the claims made by Deal, this Court finds defendant's averments to be self-serving, not credible, and contradictory to the rest of the record.  While the Court has not held a hearing with respect to the instant motion, the Court did have an opportunity to view defendant's testimony during the trial of this case.  During cross-examination, it was revealed that defendant purposefully lied on an apartment application, that he made inconsistent statements about monies received from the alleged sale of vehicles after his mother's death, and that he engaged in physical altercations with two of the victims.  Defendant testified that never purchased advertisements on "Backpage.com", however the Government introduced records from defendant's bank account showing that those purchases had been made.  Based upon these misrepresentations and the Court's observations of defendant, the Court finds that

19

defendant was not a credible witness and that he made false and contradictory statements under oath in an attempt to exonerate himself.  Indeed, the jury, who also had an opportunity to view defendant's testimony, also found the defendant not to be credible.  Thus, the Court will not credit any of the statements in defendant's affidavit over the sworn statements set forth in the two attorney affidavits.  *See Qadar v. United States*, 2014 U.S. Dist. LEXIS 111472 (EDNY 2014) (rejection of defendant's ineffective assistance of counsel claim with respect to a rejected plea offer where defendant submitted "nothing but his own ex post facto self-serving statements to substantiate his assertion that he would actually have accepted a plea offer"); *United States v. Chang*, 250 F.3d 79, 86 (2d. Cir. 2011) (where a defendant brings a "generic claim...based solely on his own highly self serving and improbable assertions" and counsel "provides a detailed description of events [that is] highly credible" a district court may dispose of an ineffective assistance of counsel claim without a full blown hearing).

Moreover, Deal's account is consistent with the trial record.  Deal explains that defendant's insistence on proceeding to an immediate trial was based upon a stubborn and unfounded belief that the victims would not testify against him, rather than any representation that Deal made regarding a potential defense.  Further, Deal states that defendant sought an immediate trial so that the Government would not have additional time to convince the victims to testify.  This explanation is consistent with defendant's decision, contrary to the advice of both his own

counsel and Magistrate Judge Scott, to forego pre-trial motions and proceed directly to trial.  Deal's affidavit is further consistent with statements Deal made on record at the conclusion of the trial.  After the jury retired to deliberate, Deal advised the Court that defendant's decision to forego pre-trial motions was contrary to his advice and the advice of Magistrate Judge Scott.  Deal also stated on record that prior to the start of the trial, he arranged for a proffer session with defendant and the Government and that, contrary to his advice, defendant decided to forego any further plea negotiations or proffer sessions and proceed to trial.

Finally, the Court wholly rejects defendant's argument that Deal should have filed a motion *in limine* pursuant to Rule 412, in an effort to persuade defendant to consider a plea, because defendant was far more likely to listen to the Court than he was to listen to defense counsel.  The record in this matter reflects that, from the start of the case, defendant refused advice, guidance, or instruction from any of the parties involved.  Defendant flatly rejected advice from defense counsel regarding available defenses, pre-trial motions, and a plea offer. Defendant also rejected his lawyers' advice not to testify at trial.  Deal avers that the proffer session ended because defendant refused to listen to both the Government and his own counsel regarding the strength of the Government's case against him.  Indeed, defendant rejected Magistrate Judge Scott's advice regarding the importance of pre-trial motions as well as his warning that the

waiving of such motions may effect defendant adversely.  Finally, Deal avers that

after the Court granted the Government's motion pursuant to Rule 412, defendant

did not ask him to resume plea negotiations.  It is clear that defendant was

adamant in proceeding to trial, that much of this decision was based upon his

belief that the victims would not testify against him, and that he repeatedly

rejected advice or information from the Government, his own counsel and the

Magistrate Judge.  Thus, there is no objective evidence before this Court that an

earlier ruling as to the admissibility of the victims' sexual history or predisposition

would have had any effect whatsoever upon defendant's decision not to accept a

plea.


## **CONCLUSION**

For the foregoing reasons, defendant's motion for a new trial pursuant to

Rule 33 of the Federal Rules of Criminal Procedure and the Fifth and Sixth

Amendments of the United States Constitution is denied in its entirety.

Sentencing is scheduled for May 20, 2015 at 1:00 PM.  The schedule for the

submission of sentencing papers is as follows: Updated Presentence Investigation

Report due by April 3, 2015; Statement with Respect to Sentencing Factors,

objections and/or motions, due by April 29, 2015;   responses to objections and/or

motions due by May 6, 2015;  character letters and/or sentencing memorandum in

support of the defendant due by May 6, 2015; motion to adjourn sentencing due

by May 11, 2015;  final Presentence Investigation Report due by May 13, 2015;

government's response papers to legal arguments in defendant's sentencing

memorandum due by May 13, 2015.

     SO ORDERED.

                    *Richard J. Arcara*
                    HONORABLE RICHARD J. ARCARA
                    UNITED STATES DISTRICT COURT

Dated:   March 12, 2015